

CLERK'S OFFICE
A TRUE COPY
Feb 24, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

A black 2014 Toyota Camry with Illinois license plate number CG56205

)
)
)
)
)
)

Case No. **21-M-344 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| Title 18, U.S.C., Sections 371, 2314 | conspiracy; interstate transportation of stolen property |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SA _____
*Applicant's signature*

FBI SA Joshua Eagen
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ___2-24-21___

_____
*Judge's signature*

City and state: ___Milwaukee, Wis___

Hon. Stephen Dries, U.S. Magistrate Judge
*Printed name and title*

**Matter No. 2020R00158**

I, Joshua Eagen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March, 2020. I am assigned to a Criminal Enterprises squad within the Milwaukee, Wisconsin Field Office, as well as to the Southeastern Wisconsin Regional Gang Task Force (SWRGTF). I have received intensive training in various surveillance techniques and the execution of various search, seizure, and arrest warrants.

2.      I am currently participating in an investigation of Interstate Transportation of Stolen Property by persons including Tony Ely aka "Baluko", date of birth (DOB) August 25, 1988, Tony Miller aka "Pepper", DOB November 10, 1973, Joe Mitchell aka "Vicodin Joe", DOB April 16, 1986, and Peter Miller aka "Picado", DOB April 11, 1987, among others. The facts in this affidavit come from my personal observations, my training, and information obtained from other law enforcement officers and informants. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

1

3.     Throughout this affidavit, the term "ruse burglary" will be used. In a ruse burglary, teams of two or more individuals work together to burglarize a victim, often an elderly individual. After a target is selected, one of the offenders approaches the victim's door with some type of ruse. Commonly used ruses include posing as a utility worker who needs to check "water pressure" in the basement or a construction worker who needs to discuss damage to the exterior of the residence. Regardless, the goal of this subject is to distract the victim for a sufficient amount of time that the other members of the team can gain entry to the residence unnoticed and steal small, easily moveable valuables such as cash, coins, jewelry, and sometimes firearms.

4.     Additionally, the term "fence" will be used throughout the affidavit. A fence, for the purpose of this document, is an informal term used to describe an individual who knowingly buys stolen property in order to sell it later for a profit.

## II.     PURPOSE OF AFFIDAVIT

5.     This affidavit is submitted in support of an application for a search warrant to seek evidence of interstate transportation of stolen property in violation of Title 18 U.S.C. Sections 2314 and 371. There is probable cause to search the vehicle described in Attachment A for evidence of these crimes as further described in Attachment B.

## III.     FACTS SUPPORTING PROBABLE CAUSE

6.     On January 16, 2020 a complainant contacted the FBI's Milwaukee Field Office to report a burglary that had occurred in Mequon, Wisconsin on December 26, 2019, at approximately 2:00 PM CST, with a loss of approximately $100,000. During the incident, an unknown male subject wearing a "WE Energies" uniform presented himself

2

as a utility worker and stated that he needed to conduct a test on the water inside the home. The subject led the 86-year old resident and her disabled adult daughter to the basement, provided them with meters, and instructed them to stand near the utility sink and the water softener, respectively, while the meters checked water quality in those locations. The subject then went upstairs for approximately 15 minutes, after which he returned to the basement, collected the meters, and instructed the residents to continue monitoring the water for variations in color. After approximately 15 additional minutes, the residents returned upstairs to find numerous valuable belongings missing from their bedrooms. The belongings, valued at approximately $100,000, included jewelry, three or four credit cards from a purse, and a coin collection that belonged to the deceased husband of one of the residents. The subject was described by the victims as a "middle eastern" male with a large build, tan skin color, and black and gray facial hair. He was also described as having an accent and being approximately 50-65 years of age.

7.     Further investigation revealed that a series of similar incidents had occurred throughout southeastern Wisconsin and northern Illinois between November, 2019 and March, 2020. Most of the subjects used ruses to gain entry to the residences, and the victims were almost exclusively elderly individuals. A number of these incidents are summarized in the paragraphs below.

8.     On November 2, 2019 River Hills, Wisconsin Police Officers were dispatched to a residential address in response to a suspicious activity complaint. The 78-year-old resident stated that an unknown Hispanic male approached her at her home at approximately 2:30 PM CST, claimed to be working at her neighbor's house, and asked

3

to borrow a bucket of hot water. The resident told the subject she had a bucket in the garage and sent the subject down the driveway while she opened the garage door from the inside. The subject then retrieved the bucket from inside the garage, entered the resident's house, and began to fill the bucket in the kitchen sink. While filling the bucket, the subject stated that he had noticed some damage to the stone on the exterior of the house. The resident and the subject walked outside and spoke about the damage for what the resident estimated to be approximately five minutes, after which they returned to the kitchen. The subject advised that he would return later to further discuss the damage to the house, and then left without taking the bucket of water. Approximately 10 minutes after the subject left, the resident went to her bedroom and found that her bedroom dresser had been pulled out and disheveled, and that two expensive watches and some cash had been taken. The resident provided appraisal documentation for the jewelry which indicated that the loss was approximately $13,150. She described the subject as approximately 30 years old and that he drove a dark colored pickup truck.

9.      On January 8, 2020 a 93-year old female resident of West Allis, Wisconsin was approached by two individuals at approximately 1:00 PM CST. The subjects claimed they needed to work on the resident's roof, and that they needed to enter the resident's house. After the resident allowed them to enter, one of the subjects filled buckets full of water from the resident's laundry room and carried them out of the house one at a time. After some time, the resident noticed the second subject walking down the hallway from her daughter's bedroom at which point both subjects walked out the front door and left.

4

The resident later noticed that numerous pieces of jewelry were taken from both bedrooms.

10. On January 25, 2020 an 83-year old resident of St. Francis, Wisconsin was approached at her home by a heavyset white male (Subject #1) at approximately 2:30 PM CST who claimed to be there regarding a replacement warranty on her gutters. The resident noticed that a small silver or gray in color Sport Utility Vehicle (SUV) was parked in her driveway and that two other white males were still sitting in the vehicle; one in the front passenger seat (Subject #3) and one in the rear passenger seat (Subject #2). The resident called for her 85-year old husband who joined them at the front door. The female resident let Subject #1 into her kitchen where Subject #1 spoke to the couple about the gutters, the downspouts, and the roof before answering a call on his cellular telephone. At that point Subject #2 exited the SUV and joined the group in the residence. Subject #1 asked that the male resident show him the electrical box in the basement. The male resident recalled that Subject #1 was on his cellular telephone a lot during the incident. Meanwhile, Subject #2 brought the female resident to the front living room to speak further about the gutters. The female resident recalled that Subject #2 seemed to go to great lengths to keep her attention focused on the outer wall and ceiling of the living room leaving her blind to the rest of the interior of the house. After the three subjects left, the residents realized that a gray in color three-drawer safe which was kept in their laundry room had been pried open, and the contents removed. A vinyl-type laundry bag normally hanging from the ceiling nearby was missing as well. The numerous pieces of

5

jewelry missing from the safe were valued at approximately $36,000. The residents described the subjects as follows:

    a. Subject #1

        i. White male, approximately 45-55 years old, 6'00"-6'04" tall, approximately 250 pounds, with a "salt and pepper" colored beard.

    b. Subject #2

        i. White male with dark hair, approximately 40-45 years old, 5'07"-5'09" tall, approximately 150 pounds, and missing several teeth.

    c. Subject #3

        i. White male with a short, stocky build.

Later, on February 2, 2020 a deputy from the Lake County Illinois Sheriff's Office contacted the St. Francis Police Department regarding a blue bag recovered along a rural highway in Lake County, Illinois. The bag contained numerous empty jewelry boxes, a small brown leather-type box with old military medals and tags, and a safe that had been pried open to reveal passports and other documents identifying the St. Francis, Wisconsin residents as the owners. The residents themselves later confirmed that the items recovered in Illinois belonged to them.

11. On March 10, 2020 an unknown subject approached an 85-year old resident at her home in Mequon, Wisconsin at approximately 2:40 PM CDT. The subject was described by the resident as a stocky Hispanic male, approximately 5'11" tall, and wearing a bright yellow construction safety sweater. He claimed he was at the residence to test the water due to a water main strike at a nearby construction site. The resident

6

stated that she did not give the subject permission to enter her home, but that he forced his way inside anyway, stating that he would show her the water was contaminated. The subject turned on the kitchen faucet and held a pen-sized device with green and red lights on it beneath the running water. The resident asked repeatedly for identification before the subject said he was going outside to make a call and left the house. The subject never left the resident's sight and did not take anything from the house when he left. Still, the resident later found that cash and numerous pieces of jewelry were missing from her bedroom. Her loss was estimated at approximately $10,000.

12. On June 15, 2020 a 76-year old female resident of Hubertus, Wisconsin was approached at approximately 1:30 PM CDT by a male subject who identified himself as an employee of an electric company. The subject escorted the resident away from the house to show her where a new electrical box was going to be installed on her property. While they were outside, the subject was on his cellular telephone speaking to someone in what the resident described as a foreign language. The resident further reported that she at one point was able to see another individual sitting inside of a white pickup truck in her driveway. Several days later, the resident discovered that numerous pieces of jewelry were missing from her home. Her loss was initially estimated at approximately $9,000.

13. On July 13, 2020 an unknown male subject approached a 90-year old resident of Hubertus, Wisconsin at approximately 3:25 PM CDT. The subject claimed he had done landscaping work for the resident in the past, and spent approximately 18 minutes leading the resident around the exterior of the residence while he discussed tree

7

trimming and the like. The subject eventually said he needed to leave to write an estimate, but he never returned. The resident's caretaker later indicated that there was approximately $13,971 in cash and jewelry missing. A video camera installed in the main entrance of the residence captured a subject enter the residence empty-handed, walk down a hallway toward the resident's bedroom, and leave with what appears to be a pillowcase full of items.

14.     An incident requiring particular attention occurred in Fox Point, Wisconsin on Tuesday, February 11, 2020 at approximately 3:40 PM CST. A subject distracted the 69-year old homeowner by claiming to be from a water utility company. He accompanied the victim to the basement, turned on the utility sink faucet, and instructed the homeowner to wait for the water to turn green. The homeowner complied for approximately 15 to 20 minutes before he became suspicious. When he returned to the main floor, he found that his green, two-drawer safe had been pulled out of his bedroom closet and pried open. Some coins in protective plastic sleeves were laying on the bedroom floor near the safe as well as a pry bar. The victim's coin collection, made up of approximately 200-300 coins and valued at approximately $321,449, had been removed from the safe. The homeowner described the subject as a Hispanic male, 30 to 50 years old, 5'7" to 5'8" tall, with a round head and face, and a dark mustache.

15.     A Confidential Human Source (CHS), hereinafter referred to as CHS #1, identified the individuals responsible for the ruse burglary that occurred on February 11, 2020 in Fox Point, as well as the telephones used by the individuals at the time. CHS #1 identified the following individuals:

8

a. Tony Miller (aka "Pepper") (PEPPER) using phone number 708-904-0841

b. Tony Ely (aka "Baluko") (BALUKO) using phone number 773-495-6844

c. Vinny Miller (VINNY) – no phone number was identified

d. Joe Mitchell ("Mr. Vicodin", "Vicodin Joe") (MITCHELL) using phone number 773-746-0229

16. CHS #1 said that the coins were subsequently taken from Wisconsin to a known fence in Illinois named Leonard Bird (BIRD) who uses phone numbers 847-698-6628 and 847-606-6125. CHS #1 later advised that PEPPER spoke with other members of the gypsy community about the coins stolen from a house in Wisconsin. Per CHS #1, PEPPER stated that they found a treasure trove of coins in a locked filing cabinet which they broke open.

17. A second CHS, separate and distinct from CHS #1 and hereinafter referred to as CHS #2, advised that other members of the gypsy community discussed how PEPPER, BALUKO, and MITCHELL were responsible for stealing rare coins in Fox Point, Wisconsin.

18. CHS #1 was a source for approximately 10 years before being charged in 2009 with numerous counts of theft and receiving a prison sentence of up to 18 years. Additionally, the FBI indicted CHS #1 in 2016 for playing a role in a jewelry store robbery years earlier. CHS #1 was released in in 2017, reopened as a source the same year, and has been reliable since that point. CHS #1 is not motivated by money, but rather cooperates out of a desire to avoid a long federal sentence in order to maintain custody of a child.

19.    CHS #2 has been a reliable source since 2016. Before becoming a source CHS #2 was charged with Residential Burglary and Theft in two separate cases. CHS #2's initial motivation was to obtain consideration for these charges. Since achieving that consideration, CHS #2 has continued to offer valuable information with no request for payment.

20.    Further investigation of the subjects identified above revealed the following physical descriptors and abbreviated criminal histories:

a.  PEPPER

   i.  Height: 5'5"

   ii.  Weight: Approximately 240 pounds

   iii.  Dates of birth used: 11/10/1973, 11/10/1972, 11/10/1963, 09/25/1970

   iv.  Abbreviated criminal history:

      1.  11/29/1996 (Michigan) – Robbery

      2.  03/25/1999 (New Jersey) – Burglary, Conspiracy-Burglary

      3.  05/06/2000 (Ohio) – Burglary

      4.  05/25/2000 (New York) – Burglary-Illegal Entry with Criminal Intent

      5.  05/31/2000 (New York) – Burglary-2nd Degree: Illegal Entry-Dwelling

      6.  06/05/2000 (New York) – Burglary-2nd Degree

7. 07/13/2000 (New York) – Burglary-3rd Degree-Illegal Entry with Intent to Commit a Crime

8. 10/04/2004 (Illinois) – Vehicle Hijacking, Kidnapping

9. 02/23/2005 (Illinois) – Theft, Criminal Trespass-Building

10. 10/09/2007 (Illinois) – Residential Burglary

11. 10/02/2008 (Illinois) – Battery/Makes Physical Contact

12. 01/10/2012 (Indiana) – Burglary

13. 02/17/2012 (Indiana) – Burglary

14. 02/23/2012 (Illinois) – Residential Burglary

15. 11/08/2012 (Illinois) – Theft

16. 11/09/2012 (Illinois) – Home Invasion/Armed/Force, Residential Burglary, Theft 10K < 100K

17. 12/15/2014 (Indiana) – Burglary, Robbery (three counts), Criminal Confinement (two counts), Interference with Reporting of a Crime, Burglary Resulting in Bodily Injury

18. 04/18/2018 (Michigan) – Home Invasion-1st Degree, Unarmed Robbery, Larceny in a Building

b. BALUKO

   i. Height: 6'0"

   ii. Weight: Approximately 200 pounds

   iii. Dates of birth used: 08/25/1988

   iv. Abbreviated criminal history

11

1. 08/26/2003 (Illinois) – Residential Burglary

2. 08/05/2007 (Illinois) – Criminal Trespass to Land, Theft by Deception

3. 06/16/2009 (Illinois) – Aggravated Assault, Residential Burglary

4. 12/29/2011 (Illinois) – Residential Burglary

5. 12/18/2014 (Indiana) – Burglary Resulting in Bodily Injury, Burglary, Robbery (three counts), Criminal Confinement (two counts), Interference with Reporting a Crime

6. 04/06/2017 (New Jersey) – Burglary, Conspiracy, Theft

7. 04/18/2017 (New Jersey) – Receiving Stolen Property

c. VINNY

   i. Height: 5'10"

   ii. Weight: Approximately 220 pounds

   iii. Dates of birth used: 02/19/1993, 02/20/1993

   iv. Abbreviated criminal history

      1. 09/24/2012 (Illinois) – Residential Burglary, Criminal Trespass-Building

      2. 03/20/2013 (Illinois) – Endanger Life/Health of a Child

3. 06/06/2014 (Illinois) – Theft by Deception (three counts), Aggravated Home Fraud (six counts), Theft/Deception >$500 < $10K

4. 12/16/2014 (Illinois) – Residential Burglary, Theft >$500 < $10K

5. 12/10/2016 (Illinois) – Aggravated Kidnapping (four counts), Kidnapping, Aggravated Unlawful Restraint, Aggravated Battery/Use of a Deadly Weapon

6. 03/07/2017 (Illinois) – Residential Burglary

7. 04/21/2017 (Illinois) – Residential Burglary

8. 05/16/2017 (Illinois) – Residential Burglary

9. 07/01/2019 (Illinois) – Residential Burglary

10. 08/02/2019 (Illinois) – Criminal Trespass Building

11. 11/26/2019 (Illinois) – Aggravated Battery/Great Bodily Harm

12. 02/29/2020 (Illinois) – Possession of a Controlled Substance

13. 03/09/2020 (Illinois) – Residential Burglary, Resist Peace Officer

d. MITCHELL

i. Height: 5'5"

ii. Weight: 160 pounds

iii. Dates of birth used: 04/16/1986

13

iv. Abbreviated criminal history

1. 08/09/2003 (Illinois) – Theft

2. 09/27/2005 (Illinois) – Criminal Trespass to Residence

3. 02/05/2007 (Illinois) – Criminal Trespass Building

4. 08/05/2007 (Illinois) – Criminal Trespass to Land, Theft by Deception

5. 04/29/2009 (Illinois) – Residential Burglary

6. 05/28/2011 (Illinois) – Home Invasion/Armed/Force, Aggravated Kidnapping (two counts), Residential Burglary, Aggravated Battery/Victim over 60

7. 07/13/2011 (Illinois) – Residential Burglary

8. 10/01/2011 (Illinois) – Possession of a Controlled Substance

9. 04/29/2015 (Illinois) – Residential Burglary

10. 08/01/2017 (Illinois) – Residential Burglary

21. Based on personal observation and collaboration with other law enforcement officers, I know that relationships exist between BALUKO, VINNY, PEPPER, and MITCHELL. On December 29, 2011 BALUKO, PEPPER, and BALUKO's father, Sandy Miller were arrested pursuant to numerous arrest warrants that had been issued for all three of them. On March 27, 2020 a jail telephone call took place between Cook County Department of Corrections (CCDOC) inmate Kenny Miller (KENNY) and several of his family members. During the call, KENNY referenced monetary transactions between VINNY and BALUKO. VINNY also placed numerous jail telephone calls while

14

in custody at the CCDOC. Seven of those calls were made to telephone number 773-746-0229, a number identified by CHS #1 as used by MITCHELL.

22.    Historical cell site information received on or around June 9, 2020 from Sprint Corporation pursuant to a search warrant revealed that telephone number 773-746-0229 was in the area of Milwaukee, Wisconsin at approximately 12:10 p.m. on February 11, 2020. The same cell site information shown that telephone to be in the area of Niles, Illinois at approximately 5:22 p.m.

23.    Additionally, there were multiple telephone calls between telephone numbers 773-746-0229 and 847-606-6125 on February 11, 2020. According to CHS #1, 847-606-6125 is a cellular telephone number used by Lenny Bird.

24.    On Sunday, March 1, 2020 an individual visited Cohen Brothers Pawn, street address 1243 Hirsch Avenue, Calumet City, Illinois 60409, under the name Tony Miller to sell a collectible coin for which he received approximately $1,400. The phone number he provided during the transaction was 708-904-0841.

25.    On Thursday, April 27th, 2020 and Monday, March 2, 2020 an individual under the name Candy Ely (CANDY) visited Cash America Pawn of Chicago, street address 1841 River Oaks Road, Calumet City, Illinois, 60409 to sell, among other thing, three (3) collectible coins for which she received a total of approximately $4,100. The phone number she used during the transaction was 708-904-0841.

26.    On December 29, 2020 a black in color 2014 Toyota Camry with Illinois license plate number CG56205 and Vehicle Identification Number (VIN)

4T1BD1FK4EU115627 was involved in a traffic accident on Interstate (I)-94/I-41 northbound in the Village of Bristol, Wisconsin. The accident resulted in the deaths of both occupants, Tony E. Thomas, DOB August 25, 1988, and Monica Miller, DOB February 18, 1998 (MONICA). Based on my personal observations and collaboration with other law enforcement officers, I know Tony E. Thomas to be an alias of Tony Ely, DOB August 25, 1988 aka "Baluko" (BALUKO). Blood tests conducted on BALUKO revealed the presence of CNS stimulants. Additionally, a substance later determined to be THC was discovered in the vehicle. MONICA was discovered with a high-end purse between her legs. Inside of the purse were multiple items of clothing which appeared new and still had price tags attached to them as well as a wallet which appeared new and did not contain any cards or personal items. No cellular telephones were seized from the vehicle or discovered by the Medical Examiner's (ME) office that received the bodies. However, the ME did find a knotted plastic bag in MONICA's bra which contained what appeared to be a white powdery substance. This baggie was seized by the Kenosha County Sheriff's Office (KCSO) who discovered that the bag contained multiple prescription pills. These pills were determined to contain Alprazolam and/or Acetaminophen/Oxycodone 325.

27.    Subsequent to the accident the vehicle was towed to a lot located at Jensen Towing, street address 5410 50th Street, Kenosha, Wisconsin 53142.

28.    The vehicle is registered to Dumka Services LLC, street address 1141 Lee Street, Unit B, Des Plaines, Illinois 60016 which houses an automobile repair shop, Advance Collision & Repair. On December 27, 2020 Advance Collision & Repair rented

the vehicle to Juan Valesquez [ph] who subsequently reported it stolen on December 30, 2020.

29.     Based upon my observation and collaboration with other law enforcement officers, I know that members of the gypsy community often attempt to obfuscate their identity from law enforcement through various means. This may include changing vehicles, changing license plates, or using falsified temporary tags.

30.     I know from personal observation and collaboration with other law enforcement officers that male members of the gypsy community often delegate tasks such as selling items at pawn shops to female members of the same community.

31.     I know from personal observation and collaboration with other law enforcement officers that offenders have used their mobile telephones or radios during the commission of ruse burglaries. This was also observed and reported by some of the victims of these burglaries.

32.     I have also learned through collaboration with other law enforcement officers that no cellular telephones were seized from the crashed vehicle described above, and no cellular telephones were submitted to or discovered by the Medical Examiner's office.

33.     Based upon the facts in this affidavit, there is probable cause to believe that BALUKO was engaged in interstate transportation of stolen property and was utilizing cellular telephones to communicate with co-conspirators prior to, during, and/or after the burglaries. I further submit that probable cause exists to believe that one or more

17

cellular telephones are present inside the aforementioned vehicle, and that obtaining these phones will be of great assistance in determining BALUKO's co-conspirators.

## AUTHORIZATION REQUEST

34.     Case agents believe, based on the facts contained within this affidavit, that there is probable cause to believe that a black in color 2014 Toyota Camry with Illinois license plate number CG56205 and Vehicle Identification Number (VIN) 4T1BD1FK4EU115627 that is located at Jensen Towing, street address 5410 50th Street, Kenosha, Wisconsin 53142 contains evidence pertaining to the fruits, instrumentalities, and proceeds of Title 18 U.S.C. Sections 2314 and 371, all of which are detailed more specifically in Attachment B, Items to be Seized.

**Matter No. 2020R00158**

**PLACE TO BE  SEARCHED**

A black in color 2014 Toyota Camry with Illinois license plate number CG56205 and Vehicle Identification Number (VIN) 4T1BD1FK4EU115627 located at Jensen Towing, street address 5410 50th Street, Kenosha, Wisconsin 53142.

A picture of the vehicle to be searched follows:



19

**ATTACHMENT B**

**Matter No. 2020R00158**
w
**ITEMS TO BE SEIZED**

All records relating to violations of 18 U.S.C. §§ 2314 and 371, including but not limited to:

> All bank records, checks, credit card bills, account information, and other financial records;

> Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

> Indicia of residency;

> Firearms, ammunition, or accessories;

> Jewelry, coins, purses or other proceeds or records from these crimes;

> Safes, vaults, or lock boxes used to store proceeds or records from these crimes;

> U.S. Currency; and

> Cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).